DAVID, J.
 

 This is one of 10 cognate eases, involving a total of 28 defendants, of whom Melvin Chambers is one. The complaints charged the defendants with violations of California Penal Code, section 330, making illegal, among others, the game of stud horse poker; of Los Angeles Municipal Ordinance 36674 (N.S.), prohibiting certain games not included in Penal Code, section 330; and of Los Angeles Municipal Code (Ord. No. 77,000) section 43.13.2, prohibiting visits to a place where gambling is carried on.
 

 The defendants were duly arraigned, and entered pleas of “not guilty.” Prior to March 5,1959, some defendants named in the complaints had been tried, convicted and fined; some others had entered pleas of “guilty” but on the morning of
 
 *Supp. 878
 
 March 5, 1959, were permitted to change their pleas to “not guilty. ’ ’ The cases were called for trial and it was determined they were ready for trial. The defendants to be tried were present, with counsel, and the People were represented by counsel. Without any other preliminaries, the court requested the defendants to step inside the bar, made the statements which are hereinafter related, and terminated the eases, saying, “I am dismissing these cases, and I am dismissing them because of the reason that I believe that it constitutes discriminatory enforcement.” The People have appealed from such order of dismissal in each case.
 

 Beyond doubt, where the laws have been enforced in a discriminatory manner, with the intent and purpose to deny the equal protection of the law to any persons or group of persons, a discriminatory enforcement-of a statute fair on its face when established by adequate proof may invalidate an otherwise proper conviction. This is an appeal from a dismissal of an action without putting intentional discrimination in issue, and without the receipt of proof in an adversary trial.
 

 The reporter’s transcript reflects the following proceedings:
 

 ‘ ‘ Court : I want the following defendants to step forward, come inside the rail:
 

 “Warner Isadore, Matthew Harrison, Roy Benson, William Flowers, George Barton, Isaac Johnson, Wilhelm Ford, Alvin Armstrong, James Hutcherson, James Allen, John Hall, Craig Wilson, Oliver Moss, Leonido Easter, Prince Clay, Eural Bradford, Robert Lewis, Edward J. Davis, Melvin Chambers, Leon Scott, Marion Thomas, Frank Warren, Burrell Ford, Arthur Wilson, Hayne Chick, Roosevelt Jones, Edgar Askey, John Millender.
 

 ‘ ‘ Some three weeks or a month ago, this Court had the occasion to write a letter to the Chief of Police calling attention to the fact that, in this Court’s opinion, the gambling laws of this city are enforced mainly against members of the Negro race.
 

 “The Chief took exception to that statement and pointed out, by his statistics, that in the last two years 12,000 Negroes were arrested for gambling and 1,200 Caucasions. Of course, I know that the figures are deceptive because of the fact that the 1,200 Caucasians mentioned were arrested in areas other than the Central Los Angeles area: In Van Nuys and San Pedro and other areas.
 

 “But, I also take great exception to what I term a discriminatory pattern of enforcement of the gambling laws of this
 
 *Supp. 879
 
 city. It is my opinion they are enforced mostly against members of the Negro race. If I were to take the Chief’s figures as they speak of this, it would lead me to believe that Negroes, who constitute 10% of the population of this city, are responsible for 90% of the gambling in this city. I refuse to believe that as the truth. I refuse to believe that the people who make their money off of gambling in this city are making it from the penny-ante gambling that goes on in Negro homes and Negro districts.
 

 “The Chief has also invited me to point out to him instances where gambling is going on unraided. Of course, I don’t have to do that because that isn’t my job. That is his job to ferret out gambling.
 

 “But, I only have to say that gambling is going on in all sections of our city: All private clubs; it is going on in fraternal organizations; it is going on in every fight stadium on fight night in the first few rows of the ringside. Where men wave dollar bills at each other openly and notoriously, and under the view of the very officers that are present. And the exchange of money at the end of the bout—I strongly suspect it must be gambling.
 

 “And I find some comfort in the case of
 
 People
 
 versus
 
 Gordon,
 
 recorded in 105 Cal.App.2d, District Court of Appeals— The page number is quite significant—Page 711 [234 P.2d 287]—Where that Court, on passing on another type of ease, states that the deliberate or intentional discriminatory enforcement of the statute is a denial of the proper equal protection guaranteed by the Constitution.
 

 “I take the view in this case, where, in one morning, we have twenty-five defendants that are here are all of one race, that constitutes nothing more, and nothing less, than discriminatory enforcement of the law.
 

 “I am dismissing these cases, and I am dismissing them because of the reason that I believe that it constitutes discriminatory enforcement.
 

 “This, of course, is not to say to these defendants that this Court is granting any license or privilege for you to go out and gamble. Because, I am against gambling in all its forms. But, I hope that the Chief will arrest you again if you go out and repeat your act of gambling. Because, I think that each and everyone of you are guilty of what you are here charged with. But, you are no guiltier than others who go unraided and do the same thing.
 

 
 *Supp. 880
 
 “I am not going .to stand by and let these things go unnoticed. ’ ’
 

 (Applause by court spectators.)
 

 Penal Code, section 1385, provides: 1 ‘ The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading. ’ ’
 

 Penal Code, section 1387, provides: “An order for the dismissal of the action, made as provided in this chapter, is a bar to any other prosecution for the same offense if it is a misdemeanor, but not if it is a felony.”
 

 The minute order in each of these cases reads: “Dismissed as to (naming defendant) in interest of justice”; or (in one case): “Dismissed as to all defendants in interest of justice.”
 

 A dismissal for any cause by a municipal court, including a dismissal in reliance upon Pen. Code, section 1385, is appealable by the People so long as the defendant has not been placed in jeopardy. (Pen. Code, § 1466;
 
 People
 
 v.
 
 Baxter
 
 (1953), 119 Cal.App.2d 46, 50 [258 P.2d 1093] ;
 
 cf. People
 
 v.
 
 Ring
 
 (1957), 26 Cal.App.2d Supp. 768 [70 P.2d 281] ;
 
 People
 
 v.
 
 Banat
 
 (1940), 39 Cal.App.2d Supp. 765 [100 P.2d 374].)
 

 In Penal Code, section 1469, the powers of this reviewing court are stated: “Upon appeal by the people the superior court may review any question of law involved in any ruling affecting the judgment or order appealed from, without exception having been taken in the trial court. . . . The superior court may reverse, affirm or modify the judgment or order appealed from, and may set aside, affirm or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial.'...”
 

 It will appear, therefore, that in contrast to the uncontrolled discretion of a trial judge in a superior court, under Penal Code, section 1385, the exercise of such a great power is fully subject to review upon appeal when an order of dismissal is made in the municipal court.
 

 Even where the power of review is more limited, the appellate courts have not hesitated to state that dismissals made by trial judges under Penal Code, section 1385, have been an abuse of discretion, in view of the reasons which have been assigned to justify them.
 

 In a gambling case,
 
 People
 
 v.
 
 Valenti
 
 (1957), 49 Cal.2d 199
 
 *Supp. 881
 
 [316 P.2d 633], a witness interrogated by the judge in chambers stated he had arrested the defendant at night without a warrant, and thereafter had seized certain real evidence. As stated in the opinion (p. 202) : “Without motion by or suggestion of either counsel, the judge ruled as follows: ‘The Court is going to dismiss the information. I feel there was sufficient information that, had the Sheriff’s Department wanted to obtain ... a warrant . . . they could have done so and then that there would have been no question as to illegal [arrest and] search and seizure. ... I am dismissing the information at this time for insufficiency of the evidence, . . . based on the lack of reasonableness of the arrest. ’ . . . The jury were discharged. The minutes state that the order is one ‘dismissing said Information on the grounds of illegality of the arrest of the defendants.’ ” Reviewing this order, the Supreme Court affirmed the dismissal. It held that the defendant could not be retried, because he had been placed in jeopardy, and that in the Superior Court a dismissal under Penal Code, section 1385, was not appealable. Nevertheless, it devoted many lines to the characterization of the judge’s action (at p. 204) as “egregiously erroneous.”
 

 In
 
 People
 
 v.
 
 Disperati
 
 (1909), 11 Cal.App. 469, 472 [105 P. 617], the district attorney made a motion to dismiss a case in furtherance of justice after the jury disagreed. The motion was made on the grounds, among others, that it was important to apprehend the defendant’s accomplices; and that “the trial of this action will be very expensive and might burden the county general fund, that money due for other county expenses and contracts might thus be consumed, thereby causing
 
 bona fide
 
 claimants to lose their legal rights. ...” The trial court granted the motion. The appellate court stated (p. 476) : “The legislature has not attempted to define the expression ‘in furtherance of justice,’ and therefore it is left for judicial discretion exercised in view of the constitutional rights of the defendant and the interests of society to determine what particular grounds warrant the dismissal. As far as the depleted condition of the treasury is concerned, we cannot give our adherence to the view that this is a sufficient ground for the course pursued. ...”
 

 Penal Code, section 1385, requires that the minute order must set forth the reasons for the dismissal. We have no authority to disregard this requirement or to hold that it is merely directory.
 
 (People
 
 v.
 
 Disperati, supra,
 
 11 Cal.App. 469, 476.) Here, there is no pretense that the minute order
 
 *Supp. 882
 
 of the court recited the reasons on which it was based. It is true the reporter’s transcript shows the trial court’s motivation for the action, but the
 
 minutes
 
 do not reflect the reasons why the dismissals were “in the interest of justice.”
 

 As was said in
 
 People
 
 v.
 
 Disperati, supra,
 
 11 Cal.App. 469, 477: “It is to be observed that this is no ‘technical’ objection to the proceedings as the term ‘technical’ is commonly understood, but it relates to an important rule of procedure which the legislature has provided for the guidance of the courts, and the omission to observe it cannot be held to be innocuous without an invasion of the authority of a co-ordinate branch of the government. If the practice of which complaint is made is to be continued, it is manifest that great abuse is likely to follow, more dangerous to society than even the acquittal of the guilty.”
 

 A judge dismissing criminal charges without trial, upon his own motion, must record his reasons so that all may know why this great power was exercised, and such public declaration is indeed a purposeful restraint, lest magistral discretion sweep away the government of laws.
 

 We have been urged to permit the trial court to amend the minute order, to incorporate therein the substance of the judge’s statements. If the minute order incorrectly or insufficiently states the action of the court, the trial court itself has the power to amend it, to conform to the order actually made. But it is clear that the inclusion of any or all of the reported statements would not infuse validity into the invalid order, which under the circumstances exceeded the discretion confided in the municipal court under Penal Code, section 1385.
 

 A dismissal “in furtherance of justice,” upon review, must show that there has been the exercise of a valid legal discretion, amounting to more than the substitution of the predilections of a judge for the alleged predilections of the peace officers. It is an abuse of discretion for a judge without a hearing to hold there is deliberate or intentional unequal enforcement, since in all cases it is presumed that official duty has been fully and regularly performed by the public authorities until there is judicial proof to the contrary.
 

 The basic question is, “Are defendants guilty?”, not whether there are other lawbreakers who have escaped detection and punishment.
 
 (Cf. Morgan
 
 v.
 
 Sylvester
 
 (1954), 125 F.Supp. 380, 387;
 
 Saunders
 
 v.
 
 Lowry
 
 (C.C.A. 5th 1932), 58 F.2d 158, 159;
 
 People
 
 v.
 
 Hess
 
 (1951), 104 Cal.App.2d 642,
 
 *Supp. 883
 
 685 [234 P.2d 65], app. dis. 342 U.S. 880 [72 S.Ct. 177, 96 L.Ed. 661].)
 

 Upon trial, defendants are entitled to present proof, if any, that there has been intentional discrimination, based on any improper consideration.
 

 Discriminatory law enforcement, to constitute a want of due process of law, and a denial of the equal protection of the laws, must be intentional, and purposeful. It will not be presumed, and before it can be established, proof thereof must be judicially made. In
 
 Snowden
 
 v.
 
 Hughes
 
 (1943), 321 U.S. 1, 8-9 [64 S.Ct. 397, 88 L.Ed. 497], it is said: “The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. . . . But a discriminatory purpose is not presumed. . . . Thus the denial of equal protection by the exclusion of Negroes from a jury may be shown by extrinsic evidence of a purposeful discriminatory administration of a statute fair on its face. [Citing cases.] But a mere showing that Negroes were not included in a particular jury is not enough
 
 •
 
 there must be a showing of actual discrimination because of race. ...”
 

 In
 
 Ah Sin
 
 v.
 
 Wittman
 
 (1905), 198 U.S. 500, 506 [25 S.Ct. 756, 49 L.Ed. 1142], wherein it was claimed that Chinese were discriminated against in enforcement of the San Francisco gambling ordinance, the refusal of habeas corpus by the California court was affirmed. It was pointed out that the doctrine of
 
 Yick Wo
 
 v.
 
 Hopkins
 
 (1886), 118 U.S. 356, 373 [6 S.Ct. 1064, 30 L.Ed. 220, 227], related to lawful, and not unlawful, activities. Speaking of discriminatory enforcement, the court stated at page 508: ‘‘ This is a matter of proof; and no fact should be omitted to make it out completely, when the power of a Federal court is invoked to interfere with the course of criminal justice of a state.”
 

 In
 
 People
 
 v.
 
 Flanders
 
 (1956), 140 Cal.App.2d 765 [296 P.2d 13], the trial court on its own motion set aside a portion of a grand jury indictment charging defendant with conspiracy to violate the gambling laws. From the opinion it appears (p, 767) : “It is appellant’s contention . . . that the court erred in holding that it was a denial of equal protection of the law to prosecute some while others escaped prosecution for breaking the same laws. . . . After further discussion of
 
 *Supp. 884
 
 the evidence required to constitute a conspiracy the court stated that his reason for dismissing the conspiracy charge was aside from that, stating that he could take judicial notice of the fact that similar offenses were practiced widespread in San Francisco referring to church ‘bingo’ lotteries which were allowed to run without interference and which were even advertised. He cited the case of
 
 Yick Wo
 
 v.
 
 Hopkins,
 
 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220], to the effect that if the law is administered so as to make unjust and illegal discriminations between persons in similar circumstances, the denial of equal justice is within the constitutional prohibition. The court admitted that the record before the grand jury did not show that other forms of gambling were being conducted widespread throughout San Francisco in practically every parish. No proof was offered by respondent either at the hearing or before the grand jury that there was discrimination practiced in the enforcement of the gambling law. This issue was interjected by the court. The court stated that he could take judicial notice of the fact that such offenses were practiced by church organizations and were even advertised. . .'. ” The appellate court continued (at pp. 769-770) : “Even if it be assumed that it is proper to raise the question of discriminatory enforcement of the gambling laws on a motion made under section 995, it appears that the rule of the case of
 
 Yick Wo
 
 v.
 
 Hopkins,
 
 118 U.S.
 
 356
 
 [6 S.Ct. 1064, 30 L.Ed. 220] does not stand for the proposition that persons violating the law are to have equal protection from prosecution, but rather for the proposition that equal protection of the law will be extended to all persons in pursuit of their lawful occupations regardless of their race. ... In
 
 People
 
 v.
 
 Darcy,
 
 59 Cal.App.2d 342 [139 P.2d 118], the same argument based on the Tick Wo ease was raised, as is now urged by respondent herein. The court there stated that if such an argument was accepted it would lead to the rule that ‘if some guilty persons escape, others who are apprehended should not be prosecuted. ’ . . . In
 
 People
 
 v.
 
 Montgomery,
 
 47 Cal.App.2d 1 [117 P.2d 437], it was observed that appellant therein argued that ‘ equal protection should also be extended to any person to enable him
 
 to
 
 commit a crime on a basis of equality with all other ■persons. ’ The court noted that the remedy for unequal enforcement of the law ‘does not lie in the exoneration of the guilty at the expense of society.’ It commented on the Yick Wo case, stating that there was an obvious distinction between
 
 *Supp. 885
 
 extending protection to persons of the Chinese race in pursuance of the business of laundering, and extending protection to those engaged in pandering, and that while equal protection will be extended to all in the pursuit of lawful occupations, no one has the right to demand protection in the commission of a crime. The court concluded that the only possible extension of the doctrine of the
 
 Yick Wo
 
 case to a criminal matter would be an instance where a person was under prosecution for the commission of some otherwise harmless act which ordinarily had not theretofore been treated as a crime. It was also noted in that ease that appellant therein had not attempted to defend on the basis of discriminatory enforcement of the law even if such a defense were available to him. ’ ’ The appellate court reversed the order of dismissal.
 

 In
 
 People
 
 v.
 
 Van Randall
 
 (1956), 140 Cal.App.2d 771 [296 P.2d 68], the trial court dismissed charges of violating gambling laws, after indictment by the grand jury, and the order was reversed on appeal since the trial court acted of its own motion, without proof, in respect to alleged discriminatory enforcement. It is said such a question cannot be raised by motion to dismiss, where the law itself is not alleged to be unconstitutional (pp. 776-777, wherein the court stated it was “the duty of the court below ... to test the evidence ...’’).
 

 In
 
 People
 
 v.
 
 Darcy
 
 (1943), 59 Cal.App.2d 342, 354 at p. 353 [139 P.2d 118], it is stated: “Appellant sought to inject a false issue into the trial of the charge, which, if approved, could easily lead to a rule that if some guilty persons escape, others who are apprehended should not be prosecuted. . . . Among other defenses appellant sought, by way of offer of proof, an acquittal upon the claim that others equally guilty had not been prosecuted and that he had been prosecuted because he is a communist. The first claim would be equally meritorious if presented in connection with a traffic violation, and the second would establish a precedent that nationality, race or creed might be used in all criminal cases as a defense. Both claims would simply cloud the real issue . . citing
 
 People
 
 v.
 
 Montgomery
 
 (1941), 47 Cal.App.2d 1 [117 P.2d 437],
 

 This appellate department, in
 
 People
 
 v.
 
 Sipper
 
 (1943), 61 Cal.App.2d Supp. 844, at 848 [142 P.2d 960], in respect to a cognate contention, stated: “As was pointed out in
 
 People
 
 v.
 
 Montgomery
 
 (1941), 47 Cal.App.2d 1, 14 [117 P.2d 437], ‘It
 
 *Supp. 886
 
 should be borne in mind that in the Tick Wo ease the equal protection of the law was extended to persons of a particular race to enable them to engage in a lawful business on a basis of equality with other persons. Appellant now in effect argues from this that equal protection should also be extended to any person to enable him to commit a crime on a basis of equality with all other persons. While all persons accused of crime are to be treated on a basis of equality before the law, it does not follow that they are to be protected in the commission of crime. It would be unconscionable, for instance, to excuse a defendant guilty of murder because others have murdered with impunity. The remedy for unequal enforcement of the law in such instances does not lie in the exoneration of the guilty at the expense of society. . . . Protection of the law will be extended to all persons equally in the pursuit of their lawful occupations, but no person has the right to demand protection of the law in the commission of a crime.’ ”
 

 In
 
 People
 
 v.
 
 Oreck
 
 (1946), 74 Cal.App.2d 215 [168 P. 2d 186], it appears (p. 221): “The appellants next contend that the trial court erroneously sustained objections to certain questions aimed at showing that the police discriminated against horse race betting in that the police did not raid certain establishments specializing in election and other types of bets. Appellants did not offer to prove that they were being prosecuted because of their race, color, religion, or political beliefs. They simply sought to show that others equally guilty were not being prosecuted. They contend that under the rules announced in
 
 Yick Wo
 
 v.
 
 Hopkins,
 
 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220];
 
 Williams
 
 v.
 
 Mississippi,
 
 170 U.S. 213 [18 S.Ct. 583, 42 L.Ed. 1012], and the dissenting opinion in
 
 People
 
 v.
 
 Darcy,
 
 59 Cal.App.2d 342, 354 [139 P.2d 118], such facts, if proved, would demonstrate that they had been denied equal protection of the laws. In the cases cited it was claimed that the persons involved were being prosecuted because of their race, color, religion or political beliefs. ... It is not a denial of equal protection that one guilty person is prosecuted while others equally guilty are not. This is clearly pointed out in the majority opinion in the Darcy ease, and likewise in the dissent in that case. At page 358 of the dissent it is stated: ‘It is, of course, the law that a person committing a crime cannot claim an unlawful discrimination upon a mere showing that other persons or classes of persons have committed the same offense and have not been prosecuted therefor. The cases cited in the majority opinion
 
 *Supp. 887
 
 clearly and properly establish that principle. [Citing cases.] The proffered evidence for these reasons was inadmissible.”
 

 In
 
 People
 
 v.
 
 Hess, supra,
 
 104 Cal.App.2d 642 [234 P.2d 65], appeal dismissed 342 U.S. 880 [72 S.Ct. 177, 96 L.Ed. 661], it appears at pp. 684-685: “As a further ground for reversal, appellants urge that they were denied the equal protection of the laws in that the chief right-of-way agent of the state who allegedly, ‘had bought property in the path of the freeway, signed his own appraisal and the property was resold to the state at a hiked price ’ was not prosecuted, but that ‘petty agents (appellants Rose and Hess) were singled out for prosecution. ’ Appellants offered an instruction that such was their contention and, that if the jury found such to be true, appellants were entitled to an acquittal. For reasons about to be advanced, the instruction was properly refused and the claim of appellants must be rejected. Aside from the fact that there is considerable evidence in the record showing no parallel between the transaction of the chief right-of-way agent with the state and the activities of appellants, the latter sought to inject a false issue into the trial of the instant ease, which, as is stated in
 
 People
 
 v.
 
 Darcy,
 
 59 Cal.App.2d 342, 353 [139 P.2d 118], ‘if approved could easily lead to a rule that if some guilty persons escape, others who are apprehended should not be prosecuted. ’ It is not a denial of equal protection that one guilty person is prosecuted while others equally guilty are not
 
 (People
 
 v.
 
 Darcy, supra,
 
 p. 353;
 
 People
 
 v.
 
 Oreck,
 
 74 Cal.App.2d 215, 222 [168 P.2d 186];
 
 People
 
 v.
 
 Montgomery,
 
 47 Cal.App.2d 1, 11 [117 P.2d 437], The case of
 
 Yick Wo
 
 v.
 
 Hopkins,
 
 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220] and other eases by appellants are distinguishable from the case at bar (see
 
 People
 
 v.
 
 Darcy, supra,
 
 pp. 353, 358).”
 

 The dismissals were void because the trial judge acted in a matter where he openly declared his bias and prejudgment, without disqualifying himself.
 

 The “furtherance of justice” requires consideration both of “the constitutional rights of the defendant and the interests of society” represented by the People, in determining whether there should be a dismissal.
 
 (People
 
 v.
 
 Disperati, supra,
 
 11 Cal.App. 469, 476.) The scales of justice must be kept in balance. Even as the trial judge stated of the alleged discrimination, “I am not going to stand by and let these things go unnoticed,” this Court must review the fairness of the proceeding.
 

 
 *Supp. 888
 
 The trial judge revealed that he personally had . charged that there was discriminatory law enforcement by the chief of police in an exchange of correspondence be lore these cases were called for trial; that he rejected the official statement in response to his charge; and acted upon his own extrajudicial belief that there was discriminatory enforcement of the gambling laws against Negroes, without receipt of evidence, or hearing.
 

 The reporter’s transcript indicates that the proceeding ended as follows: “This, of course, is not to say to these defendants that this Court is granting any license or privilege for you to go out and gamble. Because, I am against gambling in all its forms. But, I hope that the Chief will arrest you again if you go out and repeat your act of gambling. Because, I think that each and everyone of you are guilty of what you are here charged with. But, you are no guiltier than others who go unraided and do the same thing. I am not going to stand by and let these things go unnoticed. (Applause by Court spectators.) ”
 

 How can it be contended on the one hand that the present arrests were discriminatory, but that defendants should be arrested by the chief of police if the;' repeat the offense ? The trial judge unfortunately approached these cases with a state of mind prejudicial to a trial which would be fair to the People. He had already negatived the presumption that official duty is regularly performed; but likewise, without evidence or hearing, he asserted of the defendants: “I think that each and every one of you are guilty of what you are here charged with,” thereby negativing the presumption of innocence. Upon the present state of the record, the defendants have not been prejudiced, but the People have been. Under such circumstances, we must hold that the court transcended the bounds of discretion.
 
 (Pratt
 
 v.
 
 Pratt
 
 (1903), 141 Cal. 247, 251-252 [74 P. 742] ;
 
 Evans
 
 v.
 
 Superior Court
 
 (1930), 107 Cal.App. 372, 381 [290 P. 662].) Upon retrial of this cause, the trial judge would be subject to formal disqualification, at the instance of plaintiff or defendants. (Code Civ. Proc., §170;
 
 Calhoun
 
 v.
 
 Superior Court
 
 (1959), 51 Cal.2d 257 [331 P.2d 648];
 
 Keating
 
 v.
 
 Superior Court
 
 (1955), 45 Cal.2d 440, 446 [289 P.2d 209] ;
 
 Shasta Water Co.
 
 v.
 
 Croke
 
 (1954) , 128 Cal.App.2d 760 [276 P.2d 88] ;
 
 McVey
 
 v.
 
 McVey
 
 (1955) , 132 Cal.App.2d 120, 123 [281 P.2d 898].)
 

 Pursuant to Penal Code, section 1469, the order of dismissal entered is reversed; and trial of the defendant is ordered to
 
 *Supp. 889
 
 proceed; without prejudice to the right of the defendant as a matter of defense, to assert and offer proof that any conviction would deny him equal protection of the laws because of any proven intentional or deliberate discrimination in enforcement of the law.
 

 Swain, Acting P. J., and Huís, J., concurred.