[Crim. No. 20509. Second Dist., Div. Five. Mar. 17, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
EUGENE R. BOROUSK, JR., Defendant and Respondent.

**COUNSEL**

David D. Minier, District Attorney, A. Barry Cappello, Assistant District Attorney, and Zel Canter, Deputy District Attorney, for Plaintiff and Appellant.

Frank R. Crandall for Defendant and Respondent.

## Opinion

### REPPY, J.—

#### Procedural and Factual History

In an information defendant was charged, in separate counts, with five violations of the Health and Safety Code: in count I with selling cocaine (§ 11501); in count II with possession of marijuana for sale (§ 11530.5); in count III with possession of marijuana (§ 11530); in count IV with possession of restricted dangerous drugs (§ 11910); and, in count V with possession of narcotic paraphernalia (§ 11555). The information alleged that the count I violation occurred on November 23, 1970, and all the others on December 18, 1970.

Originally (December 21, 1970) a complaint had been issued out of the municipal court charging defendant and one Mitchell, jointly, with the sale of cocaine and defendant singly with the other violations. The record indicates that Mitchell was not apprehended, so the information charged defendant only.

At the time of defendant's arraignment in municipal court, as disclosed by a later explanation made by defense counsel not challenged by the prosecution, an understanding apparently was reached that defendant would assist the sheriff's office in locating Mitchell and in apprehending other people engaged in drug traffic (defendant being released on his own recognizance on motion of the district attorney so that he could do so), that defendant would plead guilty to possession of marijuana (count III), and that when he did so, the other counts would be dismissed. At the time set for the preliminary hearing, February 23, 1971, defense counsel proposed that defendant enter a plea of guilty to possession of marijuana and that the prosecutor move to dismiss the other counts. After a brief recess, during which he evidently conferred with his superior, the deputy district attorney advised that the prosecution could not dismiss. So the preliminary examination was conducted. Defendant was held to answer on all five counts. At his arraignment in superior court on April 14, 1971, the Honorable Floyd C. Dodson presiding, despite what had occurred in municipal court, defendant entered a plea of guilty to count III (possession of marijuana). A defense request for dismissal of the other counts was again rejected by the People. Defendant entered pleas of "not guilty" to the other counts. Apparently, then, in accordance with the current practice of the Santa Barbara Superior Court, the case was placed on the "readiness settlement calendar" at which "pretrial conferences" are conducted. The holding of this calendar

occurred sometime between April 14 (date of plea) and April 27 (date of commencement of trial). At this session defense counsel set before Judge Dodson, who was presiding, his understanding of the "plea bargain" which had been made. The district attorney[1] stated that, according to a note in his file, defendant had " '. . . mouthed off' to the deputy sheriffs . . . , and they were no longer able to work with him." The trial court "rejected [defense counsel's] argument . . . and sent the matter to trial."

The case was tried on April 27 and 28 before a jury in department 4, the Honorable Arden T. Jensen presiding. The jury brought in a verdict of "guilty" as to count V (possession of narcotic paraphernalia) and of "not guilty" on counts II (possession of marijuana for sale) and IV (possession of dangerous drugs). It reported that it was unable to reach a verdict on count I (sale of cocaine), and it was discharged. The matter was continued to May 4, 1971, in department 4, for the purposes of entertaining an application for probation or pronouncing judgment and setting a date for retrial of count I. Defendant was released on his own recognizance. However, on May 4, the case came up in department 1, the calendaring department handled by Presiding Judge Dodson.[2] Judge Dodson ordered "that a two (2) day Jury trial be set to be called on the Readiness Settlement Calendar[3] on June 2, 1971 . . . in the Department of the Presiding Judge [department 1]. . . ."

On June 2 "a discussion was had concerning whether the case should or should not be retried." Evidently no determination was made in this regard because the case was continued to the readiness settlement calendar of June 16.

On June 14, 1971, a hearing was conducted on a "Motion Brought by Court" to dismiss count I pursuant to Penal Code section 1385,[4] with respective counsel, who obviously had been summoned by court personnel, present. Judge Dodson presided. At the outset he asked if defendant were present, and defense counsel explained that he could not be located; that he (defense counsel), not then knowing of the current hearing, had only directed defendant to appear on the 16th. Judge Dodson observed that defendant's presence was "not necessary." Then, Judge Dodson, after

---

[1]The term includes, of course, any deputy or assistant.

[2]It would appear that the minute entry calendaring the matter in department 4 was an inadvertent clerical error, or the case had been diverted because of the trial setting aspect.

[3]Presumably at such calendars settlements are effected, or in default thereof, dates for trial are set.

[4]Section 1385 reads in part as follows: "The court may, . . . of its own motion . . . , and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. . . ."

briefly reviewing some of the past procedural history of the case, stated that he was "relying upon the conversation [he] had with the trial judge and the memorandum . . . from [him] wherein he indicates [that defendant was charged as an accessory for aiding and abetting Mitchell as principal and] that unless . . . Mitchell is apprehended and tried along with [defendant], 'the chances of conviction are not 100 percent (and much less)' in the words of the trial judge." Defense counsel stated that he would like to have the trial court dismiss the action on its own motion under section 1385 and, as required, have the reasons set forth in a minute order. The district attorney objected to such a step on the ground that Judge Dodson was not the trial judge, intimating a view that only the latter could dismiss under section 1385, and on the further ground that the trial court was basing its motion (and, apparently, would be its determination) upon the written memorandum of the trial judge "who had no jurisdiction because he had returned the matter to department 1."[5] The prosecution presented an affidavit executed by the jury foreman,[6] in which the foreman swears that initially the opinion of all the jurors was that defendant was guilty of count I, but it was decided to consider the other counts first so that minds would not be prejudiced; that doubts which came to the fore in the consideration of the other counts affected the consideration of count I; that its last poll as to count I stood 8 to 4 for conviction; that three of the four were ready to change their vote to "guilty"; that because of tiredness and some confusion of the jurors and the position of the fourth juror, it was felt that further deliberation or voting would be fruitless; that he was of the belief that if count I had been prosecuted alone, the jury probably would have reached a verdict of guilty; and that if it were presented in the same manner in a retrial, any 12 jurors probably would convict. The district attorney argued that the trial court, by accepting the memorandum of the trial judge and not the affidavit of the jury foreman, would be ruling on the motion without all of the facts. Defense counsel objected to the trial court's receipt of the affidavit on the ground that it was a "hearsay statement" in an attempt "to . . . impeach something that wasn't even a verdict." The trial court "rejected" the affidavit "as having no probative value" and as being inadmissible in that it "would be an attempt to impeach a nonexistent verdict."

Defense counsel then listed various factors as reasons why the trial court should dismiss count I in the furtherance of justice:

---

[5]The district attorney also objected on the ground that although the matter came up for hearing on the court's own motion, defense counsel had submitted no points and authorities which was a violation of court rules. The prosecution has not pressed this point on appeal.

[6]A copy of this is attached to the People's brief on appeal.

(a)  The district attorney had seen fit to move for the release of defendant on his own recognizance. Apparently the defense wished the trial court to infer from this that the prosecution did not consider defendant to be an inveterate criminal.

(b)  Defendant had entered into the stated plea bargain and had pled "guilty" to possession of marijuana.

(c)  How the jurors had stood (absent the information in the foreman's affidavit, of course) was a matter of rumor.[7]

(d)  Defendant, who had been without steady employment, was trying to get part time work.

(e)  Defendant would be harassed if another trial were held, bearing in mind the plea of guilty and the verdicts, two of not guilty and one of guilty, and the maximum punishments for the convictions of possession of marijuana (1 to 10 years in state prison) and of possession of narcotic paraphernalia (6 months in county jail).

(f)  Trial congestion in the five departments of the superior court ("a year or a year and a half behind [in criminal cases] and even longer in civil cases") would be aggravated by a retrial of count I, the avoidance of such congestion being the "classic" example of furthering the interests of justice.

The district attorney argued, in response to the court-congestion point, that he had offered to take the matter to a court trial which would take less time than the day and a half consumed by the original jury trial (probably less than a day); and, obviously alluding to the harassment point, he further stressed that the taxpayers of the county are concerned with criminals (such as sellers of cocaine) being on the streets.

Judge Dodson thereupon orally ordered count I dismissed pursuant to Penal Code section 1385 for the reason that "[t]he trial judge is of the opinion that it would be a waste of time of this court to retry this case without apprehending and charging . . . Mitchell" and for "all the reasons stated by [defense counsel] which are now adopted by the Court." He then directed that the matter would remain calendared for June 16, at which time it would be "referred to probation on the two counts on which [defendant] stands convicted."

The original minute order prepared for the session of June 14, 1971, reads in pertinent part as follows: "The Court . . . ordered count I . . .

---

[7]Judge Dodson stated in a preamble to the hearing that he had gotten "two different stories concerning the makeup of the jury vote" and that he was not relying on either.

dismissed for reasons as set forth by the trial Judge and by defendant's counsel, pursuant to section 1385 of the Penal Code."

On June 15, 1971, the district attorney filed a notice of appeal dated June 14, 1971.

On June 16, in department 2, Judge Charles S. Stevens, Jr., continued the proceeding "[for] probation/sentencing to July 21, 1971 . . . ."

On or about July 6, 1971, defendant's proposal for correction of the minute order of June 14, "pusuant to rule 35(c) of Rules of Court," was lodged[8] in the file. It pointed out that the minutes as drawn were defective because they did not set forth reasons for the ruling.[9] Immediately following this document in the clerk's transcript (and apparently in the file) is a minute order dated July 6, 1971, signed by the same deputy clerk who had prepared the original. It has the following caption: "Nature of Proceedings: Correct minute order for June 14, 1971, re: motion to dismiss pursuant to section 1385 of the Penal Code with said motion having been brought by the court." It recites that the trial court ordered count I dismissed and adds, "for the following [four] reasons: [1] in the opinion of the trial judge it would be a waste of time and effort to re-try . . . this count without the apprehension and charging of . . . Mitchell, [2] an implied bargain with the district attorney's office was not carried out, [3] it would be harassment of . . . defendant to re-try . . . this count . . . , and [4] the trial calendar of this court is presently so congested that it would be beneficial to all concerned for this count to be dismissed." There is then recited, apparently in support of reason (3), the facts that defendant had entered his plea of guilty to count III and had been found guilty of count V and not guilty of count II and count IV, after a jury trial.

Next in the clerk's transcript is a formal written order dated July 20, 1971, signed by Judge Dodson. It recites the advent of the hearing on the court's own motion and then states: "The court then and there made its order dismissing said count I in furtherance of justice pursuant to section 1385 of the Penal Code of California, for those reasons stated in open court and which are set forth in the reporter's transcript of said hearing, a copy of which transcript is attached hereto and . . . is referred to and incorporated herein." (A copy of the 11-page reporter's transcript then follows in the file.)

---

[8]The document contains no filing stamp.

[9]The June 14, 1971, minutes were also defective in that they showed that the jury had found defendant guilty of count III. Defendant also requested that the minutes be corrected to show that defendant had pleaded guilty to count III. This correction was made.

It appears that on July 21, Judge Dodson suspended execution of judgment on counts III and V for a period of five years and placed defendant on probation for that period.

## People's Points on Appeal

The People make the following contentions:

(1) The trial court acted in excess of its jurisdiction in dismissing the action, in that the actions of the judge were capricious and arbitrary.[10]

(2) The omission of the reasons for the dismissal in the original minute order invalidated the dismissal.

(3) The dismissal by Judge Dodson was not in the furtherance of justice in that the trial court failed to consider the interests of society.

## Discussion

We first consider the omissions of the reasons for the dismissal from the minute order.

It is true that the reasons for a dismissal under section 1385 must be set forth in the minutes[11] and that it is not sufficient that such reasons might be gleaned from a review of a transcript of the reporter's notes. (*People* v. *Beasley,* 5 Cal.App.3d 617, 637 [85 Cal.Rptr. 501].)

It is within the trial court's power, however, to amend its minute orders to conform to its actual order. (*People* v. *Winters,* 171 Cal.App.2d Supp. 876, 882 [342 P.2d 538].)

---

[10]What appears to be one example of this point was set out as a sub-contention in the body of the brief. It was that the trial court's rejection of the affidavit of the jury foreman was wrongful because it resulted in the "selection and consideration only of those facts most favorable to the judge's predisposed feelings about a matter" [i.e., the trial judge's information].

[11]The purpose for recording the reasons is said to be "that all may know why this great power was exercised" and that there be a "purposeful restraint, lest magistral discretion sweep away the government of laws" (*People* v. *Winters,* 171 Cal.App.2d Supp. 876, 882 [342 P.2d 538]); or put another way, "to restrain judicial discretion and curb arbitrary action for undisclosed reasons and motives" (*People* v. *Ritchie,* 17 Cal.App.3d 1098, 1105 [95 Cal.Rptr. 462]) and to protect the public interests against improper dismissals (*People* v. *Silva,* 236 Cal.App.2d 453, 455 [46 Cal.Rptr. 87]). It is also to enable an appellate court to determine whether discretion has been properly exercised. (*People* v. *Beasley,* 5 Cal.App.3d 617, 637 [85 Cal.Rptr. 501].)

"Apparently the Legislature believed this requirement would sufficiently protect the interests of the public. . . ." (*People* v. *Superior Court (Howard),* 69 Cal.2d 491, 496, fn. 3 [72 Cal.Rptr. 330, 446 P.2d 138].)

In the instant case the correcting order of July 6 set out substantially what was the full purport of the oral order made by the judge in open court.[12] The correction speaks as of the making of the inadvertently defective original minute order. Thus, the intervening appeal does not affect its efficacy. (See *In re Johannes*, 213 Cal. 125, 130 [1 P.2d 984]; *People v. Buck*, 46 Cal.App.2d 558, 561 [116 P.2d 160].) The same may not be said about the formal written order executed by Judge Dodson on July 20. This document was not just a further corrective device. It must be considered as having been intended to supersede the original order even as corrected. The trial court had lost jurisdiction to accomplish this because of the intervention of the notice of appeal. There had been no judicial announcement that the trial court's dismissal action would be covered by a formal written order. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 26, pp. 2694-2695; 6 Witkin, Cal. Procedure (2d ed. 1971) pt. I, Appeal, §§ 366, 367, pp. 4339-4340.)

As previously noted, the presiding judge called a hearing on his motion. This was proper. Any such court motion should be made under circumstances which will afford respective counsel a chance to be heard.[13] The hearing should be conducted with judicial propriety. When the "motion" judge[14] is one other than the trial judge he needs to get information about the nature, conduct, and outcome of the case. The principle that both court and counsel should be above reproach and avoid actions that could raise even a suggestion of impropriety is particularly applicable to this feature. In his personal interview with the trial judge the motion judge may well have learned only of fact matters which already were known by counsel and admissible at the hearing. However, it could not be known by counsel and others interested if he received other information such as an ultimate opinion of the type we indicate hereafter should not be submitted to or

---

[12]As noted earlier, the so-called "correct minute order" referred to unlikelihood of conviction without Mitchell, breach of implied bargain, harassment of defendant, and congested calendar. Omitted were defendant's effort to get part time work (demonstration of good attitude and savings of expenses of public maintenance of defendant), if, indeed, this was intended by defense counsel to be a reason; lack of insight on likelihood of conviction due to stance of jury being rumor only; and defendant's lack of predeliction for crime as suggested by prosecution's sponsorship of his release on his own recognizance. In any event, it is to be noted that the release motion was made to allow defendant to assist in locating Mitchell, so that this is diluted in strength as a separate item.

[13]It would not necessarily have to be noticed. Apparently only informal notice was given in the instant case. It might possibly be done in the course of another proceeding at which both counsel were present. Under such circumstances either attorney or both might ask for additional time for the purpose of submitting evidence and points and authorities.

[14]For simplicity we use the descriptive term "motion judge" to apply to Judge Dodson who made, heard, and ruled upon the motion to dismiss.

secured by the motion judge. Thus, such personal contact should be avoided unless under stipulation of counsel.

In the case under review the motion judge had a memorandum from the trial judge and was offered an affidavit of the foreman of the jury. Attorney motions, of course, are normally heard on affidavits. (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 24, p. 2693.) The taking of testimony at such a hearing ordinarily is optional in the discretion of the trial court.[15] (See 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 25, p. 2694; *Perez* v. *Perez,* 111 Cal.App.2d 827, 828-829 [245 P.2d 344].) We see no reason why court-made motions should not be pursued in the same manner. It would have been preferable if, in advance, copies of the former had been served on counsel and the original of the latter had been submitted to the court with copy to opposing counsel.

▪ Judge Dodson, considering the district attorney's objection to his use of the memorandum of his colleague, felt that it did not have to be in affidavit form. Disregarding for the moment its content, we believe that its judge of trustworthiness was sufficiently strong. The memorandum had the probative dignity of being from the official representative of the court which should rank even higher than a statement from an attorney given as an officer of the court, a species of information often accepted in connection with a motion of the type under consideration. However, in this particular instance, if the views of Judge Jensen are again to be presented in written form, it is recommended that they be embodied in a sworn statement. As previously indicated, of more concern is the personal contact and interview which led to the memorandum's composition and reception.

▪ Although no objection was made by either side to the indicated contents of the memorandum, we feel that it deserves consideration along with that of the foreman's affidavit as to which objection was interposed. The papers contained information concerning the nature, conduct, and outcome of the case.[16] This part of each would be properly received. It is relevant to one of the points to be evaluated, and it is material commonly learned about by attorneys in the aftermath of verdicts.

▪ As to the foreman's affidavit, if Judge Dodson's concept of absence

---

[15]In the instant matter if both papers had been in order and before the court either attorney, if he felt that important factors could be more accurately and efficiently developed through cross-examination, could have requested the motion judge to allow the declarant to be called as a witness.

[16]Some of this the motion judge just as easily could have obtained by examining the file or by having the reporter read from or furnish written transcriptions of portions of his notes. If this were to be done the motion judge should advise counsel of the parts reviewed.

of probative value meant irrelevancy, his view was not well taken. The contents of the affidavit were relevant.[17] Contrary to the thought of defense counsel, the contents are mostly nonhearsay.[18] Its defect was its conclusionary aspect. The affidavit first advised how the jury stood as to guilt or innocence on count I at its last poll (8-4 for guilt). This piece of information had no infirmity. It was something which the trial court was entitled to learn after declaring a mistrial and discharging the jury upon becoming satisfied that there was no reasonable probability that the jury could agree.[19] (Pen. Code, § 1140; *People* v. *Griffin, supra,* 66 Cal.2d 459.) The part of the affidavit dealing with initial evaluation of count I (all feeling that defendant was guilty), the decision to put off its consideration, the development of confusion, and the readiness of three of the four dissenters in the last poll to change their vote, all went to the state of mind of the jurors. However, the affiant's statement is a conclusion most probably drawn from his recollection of what various jurors stated. State of mind, of course, is discernible from the statements of a declarant. An exposition of such statements is not hearsay. (See generally, McCormick on Evidence, pp. 465, 567, 586; 6 Wigmore on Evidence, § § 1715, 1790, pp. 60-62, 237-240; see also Evid. Code, § 1250, subd. (a) (1) and (2); *Sandoval* v. *Southern Cal. Enterprises,* 98 Cal.App.2d 240, 244 [219 P.2d 928].) What the foreman did was to omit the statements and give his conclusion. This was objectionable. However, defendant did not object on

---

[17]Compare *People* v. *Doolittle,* 23 Cal.App.3d 14 [99 Cal.Rptr. 810] (rehg. den. 2/15/72, petition for hg. filed by Sup. Ct. 3/3/72), wherein the foreman of a jury which had disagreed was called to testify, without objection apparently, as to how the jury had voted. See also *People* v. *Griffin,* 66 Cal.2d 459, 464 [58 Cal. Rptr. 107, 426 P.2d 507], where, after the jury was discharged the foreman disclosed in open court that the jurors stood 10 for acquittal and 2 for guilty.

[18]We note that the motion judge did not condemn the affidavit as hearsay.

[19]Upon receiving a report from its foreman that a jury cannot agree as to a given count, it is a common and correct practice for the trial court to poll the jurors individually on the question of whether or not it would be fruitless for further deliberations to take place. (*People* v. *Doolittle, supra.*) It is also permissible for the trial court to inquire of the jury as to its numerical division without seeking to discover how many jurors are for conviction and how many are for acquittal. (*People* v. *Carter,* 68 Cal.2d 810, 815 [69 Cal.Rptr. 297, 442 P.2d 353].) It is apparently improper to ask how a jury voted with respect to guilt or innocence before it is discharged. (*People* v. *Walker,* 93 Cal.App.2d 818, 822 [209 P.2d 834]; *People* v. *Talkington,* 8 Cal.App.2d 75, 90 [47 P.2d 368] [disapproved on another point in *People* v. *Friend,* 50 Cal.2d 570, 578 [327 P.2d 97]].) We are satisfied that it is not error, and we feel that it is a meaningful step to be taken by a judge who feels he may become concerned with the question of whether a court's motion to dismiss under section 1385 should be made, after a declaration of mistrial and discharge of the jury, to ascertain by in-court procedure how many jurors were for conviction and how many were for acquittal. (See *People* v. *Doolittle, supra;* also see as an example of what can or should be done following such a declaration and discharge, *Sturms* v. *Justice Court,* 4 Cal.App.3d 36 [84 Cal.Rptr. 69].)

this ground, merely claiming hearsay and an attempt to impeach a non-existent verdict. The trial court's ruling was absence of probative value and attempt to impeach a nonexistent verdict.[20] There seems no reason why conclusionary testimony not objected to, like hearsay in the same category, should not take on the attributes of competent proof. (Cf. *Berry* v. *Chrome Crankshaft Co.*, 159 Cal.App.2d 549, 552 [324 P.2d 70]; *People* v. *Williams*, 22 Cal.App.3d 34, 50 [99 Cal.Rptr. 103] [hg. den., Cal. Supreme Court, Feb. 10, 1972].) Incompetent evidence may be considered if no proper objection is made. (*Hammel* v. *Lindner*, 224 Cal.App.2d 426, 431 [36 Cal.Rptr. 656]; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 25, p. 2694.) The extent of the probative value is for the trial court. We cannot say that such material has no probative value. The motion judge should have received this much of the affidavit. All of this would have assisted the motion judge in reaching an ultimate opinion on one of the facets bearing on the motion, the likelihood of a conviction on a retrial of count I, just as would the information contained in the trial judge's memorandum that defendant was charged as an accessory for aiding and abetting Mitchell as principal.

▮. Both papers, however, contained the *opinion* of the declarant concerning what verdict would be likely if count I were to be retried. This was the ultimate decision to be made by the motion judge. Hazards involved in receiving the outside opinions[21] coupled with the lack of need for such ancillary opinions by an adjudicator having himself ample expertise on the subject make it undesirable for the outside opinions to be before the motion judge. The opinion in each of the papers should have been excluded.

▮ We turn to a consideration of the four reasons given for the dismissal of count I. The first was that in the opinion of the trial judge it would be a waste of time to retry that count. The problem concerning the utilization of this reason has been discussed above.

---

[20]The idea that the entire affidavit was an attempt to impeach a nonexistent verdict does not appear to make any logical point. The affidavit is not trying to show that the jury was not, in fact, hung. The situation is that there was no verdict at all. In such a circumstance the status of the case is the same as if there had been no trial. There is no attempt to and apparently it would not be proper to go behind the jury's declaration that there was no reasonable probability that it could agree on a verdict. (See *People* v. *Doolittle, supra.*) Its purpose was to shed light on the likelihood of a conviction if count I were to be individually retried, even if Mitchell were not being prosecuted along with defendant.

[21]There would be the concern that the motion judge would subjugate his own opinion to that of the former. There would be a problem as to whether the subject could be covered by a nonexpert giving testimony rationally based on perception (Evid. Code, § 800) or, if not, whether the experience of a juror, perhaps in only the one case, is that which would qualify him as an expert. (Evid. Code, § 720.)

■ The second reason was that an implied bargain had not been carried out. This was not sound under the circumstances of this case. At one point in his discussion with the lower court, the attorney for defendant characterized the prosecution's asserted commitment as simply that it "probably" would dismiss. Moreover, it must be considered that the prosecution withdrew from any such commitment with proper and unchallenged cause. In addition, the record indicates that the presiding judge previously had ruled adversely on this defense contention and had sent the matter to trial. Thereafter, defendant did not move to set aside the plea of "guilty" which he suggests he made anticipating that the bargain would be consummated despite the changed attitude of the sheriff's office. Finally, the attorney for defendant stated to the trial court that he was "not saying there was a breach of the agreement."

■ The third reason for dismissal was that it would be harassment of defendant to retry count I. Part of the support for this appears to be the fact that the other four counts had been disposed of in the indicated manner. The prosecution cannot be said to be capricious or perverse in believing it should continue to prosecute defendant for the most serious of the charges and in urging, if he were convicted, that he be more severely punished. Another part of the support was an asserted unlikelihood of conviction. We have indicated the evidence problem attendant to this statute.[22] In addition, defense counsel pointed to the maximum sentences for the two charges of which defendant stood convicted. The record indicates that defendant, in fact, was given straight probation. If the support of this ground had not been infected with an evidential infirmity, considering the conflicting aspects, we cannot say that the action of Judge Dodson would have been unreasonable. (*People* v. *Curtiss,* 4 Cal.App.3d 123, 126 [84 Cal.Rptr. 106].) However, at the same time, the reason was not a robust one.[23]

■ With respect to the factor of court congestion, what detailed

---

[22]Incidentally, it is not certain to what degree of likelihood of conviction the prosecution is being held if the motion judge used the trial judge's gauge; something more than or much less than 100 percent.

[23]We are mindful of the language of the Supreme Court in *People* v. *Superior Court (Howard)*, 69 Cal.2d 491, 504 [72 Cal.Rptr. 330, 446 P.2d 138], but we do not feel that the language precludes this evaluation, and we note that there a trial judge's appraisal was directly involved and stressed. In *People* v. *Superior Court (Mowry)*, 20 Cal.App.3d 684, 687 [97 Cal.Rptr. 886], also involving Judge Dodson, the prosecution's position was weaker because it had seen fit to dismiss an extra count of forgery after the defendant had been sentenced on the first count, and it was felt that another conviction of the very same crime, when another charge was filed six weeks later, would contribute nothing to the overall enforcement of criminal law.

information there is in the record is in the form of comments of defense counsel to Judge Dodson.[24] The latter, as presiding judge, would know the status of his calendar. If the district attorney felt that the judge's appraisal of its condition and of the benefit to be achieved by not adding the contemplated trial to it was not sound, it was up to him to marshal statistics and to ask us to take judicial notice of them. (Evid. Code, §§ 459, 452, subd. (d), 453.) It is true that the jury trial of five counts took just a day and a half and that the district attorney offered a court trial with an estimated time of one-half day. However, the presiding judge on May 4, 1971, without setting a trial date, had given the case a two-day trial status. It cannot be said that it has been shown that this reason is unsupportable. The facts disclosed, however, suggest that it is not overwhelmingly strong.

■■■ Some of the complexities discussed herein would have been avoided had Judge Dodson, after making his motion, transferred the hearing to the trial judge. The district attorney took the position at the hearing that this was required. This is not essential, but certainly it is desirable. The trial judge would have a "feel" of the case and would already know about the nature, conduct and outcome of the case and the theory of the prosecution and defense and all similar information of which respective counsel also would be aware. The trial judge is in a better position to deal with the intangibles with which a case is so often impressed; and there could evolve the typical exchange of views among court and counsel as a means of developing relevant material from which the judge could make an informed and studied decision. Of comparable aspect is the step of hearing a motion for new trial or application for probation. There the reviewing courts have said that it is "preferable" and "the ends of justice are generally better served . . . for the member of the court who presided at the trial to hear [and determine] a motion for a new trial" (*People* v. *Norton,* 141 Cal.App.2d 790, 792 [297 P.2d 439]; *People* v. *Tokich,* 128 Cal.App.2d 515, 517 [275 P.2d 816]); and that it is "normally the better procedure for the judge who tried the case . . . to act on the matter of probation and sentence." (*People* v. *Cole,* 177 Cal.App.2d 458, 460 [2 Cal.Rptr. 190]; see also *People* v. *White,* 221 Cal.App.2d 742, 745, fn. 2 [34 Cal.Rptr. 843].) It is recommended that if a section 1385 hearing before a judge other than the one who conducted the trial poses the likelihood of such difficulties as were here encountered, the matter be transferred to the trial judge if he is reasonably available.

[24]He asserted that the superior court was a year and one-half behind in criminal cases and more in civil matters.

## CONCLUSION

The trial court's discretion to dismiss pursuant to section 1385 is very broad *(People* v. *Superior Court (Howard), supra,* 69 Cal.2d 491; *People* v. *Superior Court (Mowry), supra,* 20 Cal.App.3d 684), although subject to the requirement that the reasons for the court's decision be such as "would motivate a reasonable judge." *(People* v. *Curtiss, supra,* 4 Cal. App.3d 123.) On the other hand, the furtherance of justice requires that justice be done to the People's interests as well as to the defendant's. *(People* v. *Superior Court,* 249 Cal.App.2d 714, 718 [57 Cal.Rptr. 892]; see also *People* v. *Fretwell,* 8 Cal.App.3d Supp. 37, 41 [87 Cal.Rptr. 356].)

In final evaluation, noting the lack of support for reason (2) (alleged breach of plea bargain), the shadow of inappropriate procedure in connection with the receipt and rejection of evidence as to reason (1) (unlikelihood of conviction), and the modest strength of the other two reasons (harassment and court congestion), we are unable to say what the position of the motion judge would be with two of the bases removed (one for lack of support and the other for procedural irregularity). There is a hint that he felt most strongly about the first reason as supported by Judge Jensen's memorandum,[25] but he did, of course, embrace the others when stated by defense counsel. The judgment should be reversed and the matter remanded for reconsideration.

Nothing we have said herein precludes a future dismissal of the instant action if it is determined at a properly conducted hearing that such dismissal would be in the furtherance of justice.

## DISPOSITION

The judgment of dismissal is reversed and the matter remanded for further proceedings consistent with this opinion.

Stephens, Acting P. J., and Aiso, J., concurred.

---

[25]The record suggests that Judge Dodson had made up his mind on the basis of the information from Judge Jensen before he heard defense counsel enumerate other reasons, because he voiced his outlook that the presence of defendant was "not necessary," and it is hardly likely that he could have proceeded in defendant's absence unless he was contemplating a ruling in his favor.