[Civ. No. 40540. First Dist., Div. Three. Mar. 31, 1977.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA
COUNTY, Respondent;
ROBERT ALLAN GODWIN, Real Party in Interest.

## Counsel

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and David Schneller, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Sheldon Portman, Public Defender, Katharine V. Alexander and Nancy Hoffman, Deputy Public Defenders, for Real Party in Interest.

OPINION

**DRAPER, P. J.**—Charged with sexual molestation of a child (Pen. Code, § 288), defendant confessed his guilt in a police station interview. Shortly before the confession, he had been arrested on the sidewalk outside the apartment house in which he lived. He moved (Pen. Code, § 1538.5) to suppress evidence of the confession, asserting it to be the product of an unlawful arrest. The trial court granted the motion on the ground that the police officer's request that Godwin accompany him to the sidewalk for further questioning was but a subterfuge designed to evade application of the rule which bars warrantless arrest of a suspect in his home, absent exigent circumstances. (*People* v. *Ramey,* 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333].) The People petitioned this court for writ of mandate (Pen. Code, § 1538.5, subd. (o)), we issued alternative writ, and the issue has been briefed and argued.

Early in the evening of October 4, 1976, the child's mother telephoned the police to complain of abuse of her five-year-old daughter. Officer Weber went to the complainant's apartment to investigate the charge. He talked to both parents. They told him that they had paid one Donna, a woman resident of an apartment in the same building, to babysit their daughter, Nina, from 8:30 a.m. to 11:30 a.m. daily from September 20 to October 4, 1976. At some unspecified date in that two-week period, Donna moved away. The parents had no funds to pay another baby sitter. "Bob," who had briefly occupied Donna's apartment while she and another female lived there, and remained when Donna left, volunteered to replace Donna and had acted as baby sitter for a few days. Nina had told her parents that Bob had spanked her with a belt, confirmed by the officer's seeing scars on Nina, and that he had inserted his finger in her vagina. Nina repeated the charge to the officer. Neither parents nor child knew Bob's last name, but the parents told Officer Weber the number of the apartment in which he lived with a woman and her child. Officer Weber went there, and knocked on the door. A man answered. The officer asked for identification, and the man showed a driver's license in the name of Robert Godwin. The officer testified that he wanted to "determine whether [this man] was the person who had been babysitting Nina," and that because of the "sensitivity" and "seriousness" of the offense, he wanted to question him out of the presence of the others in the apartment. He asked the man to accompany him to the sidewalk. As they neared the patrol car, the officer asked Godwin if he were in fact the recent baby sitter for Nina. When the man

said that he was, the officer arrested him, took him to the police station, gave the *Miranda* warning, and questioned him. The confession ensued.

█ The trial court made a written order in which it found that when he went to the apartment, Officer Weber had probable cause to arrest defendant. We find in this record no evidence to sustain that inference. The officer knew only that a "Bob" who had resided briefly in that apartment was the true suspect. There is no testimony of absence or infrequency of male visitors to the apartment, and thus no reason to charge Officer Weber with knowledge or belief that any male who answered the door was the "Bob" he sought. There simply is no factual basis for disbelief of the officer's testimony.

Although the trial court did not so find, real party argues that when the door was opened and real party identified himself as Robert Godwin, the officer had reasonable cause to arrest him. But the officer concededly did not know the last name of the suspect. Those named Robert are often called "Bob." The nickname is by no means uncommon. The record indicates that the officer had a "description" of the suspect from the parents, but that description is not recited in the record before us. The officer testified to his own belief that, until the sidewalk interview, he did not feel he had probable cause to arrest. The record contains no evidence whatever to support an inference that the officer feigned or misstated his true belief. The record suggests, and the trial court found, no element of manner, demeanor, hesitance or other indication of untruthfulness of the officer's statements of his belief.

Nor is there any factual basis for the assumption that Officer Weber sought to evade the rule of *Ramey*. That case had been decided some seven months before this arrest. Weber's testimony nowhere suggests, however remotely, that he knew of the rule either by name or in general substance. There is no evidence of the manner of dissemination of such information to the many police agencies of the state and, of course, no showing that it had reached the Sunnyvale Police Department or its officer, Weber. Such lack of knowledge would, of course, be immaterial if a violation of the *Ramey* rule had in fact occurred. Here, however, the trial court's decision is premised wholly upon intentional resort to subterfuge for the express purpose of evading the *Ramey* rule.

We note, also, that exigent circumstances taking the case out of *Ramey* could well have been found if Officer Weber had conducted his interrogation within the apartment. The officer was in uniform. His

questioning of Godwin as to his contacts with Nina could well sound an alarm to the suspect. Godwin was a very short term co-occupant of an apartment rented by others, and a thoroughly reasonable fear of his departure before a warrant could be secured would have been warranted. In *Ramey,* the suspect had been fully identified and the charge against him detailed. The officers had no reason to approach his home save to arrest him. This issue was not reached below, but it clearly distinguishes *Ramey.*

Let peremptory writ of mandate issue, directing the trial court to vacate its order suppressing evidence and to enter its order denying the petition for suppression.

Scott, J., and Devine, J.,* concurred.

A petition for a rehearing was denied April 29, 1977, and the petition of the real party in interest for a hearing by the Supreme Court was denied May 26, 1977. Bird, C. J., Mosk, J., and Sullivan, J.,† were of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.