[Crim. No. 18653. Sept. 14, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
JERROLL RAY HUNT, Defendant and Appellant.

Counsel

Harold F. Tyvoll, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**CLARK, J.**—Jerroll Ray Hunt appeals from judgment entered upon jury convictions of first degree robbery (Pen. Code, §§ 211, 211a) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)).[1] The jury also found as true an allegation that during the commission of the robbery defendant had used a firearm within the meaning of section 12022.5.[2]

Defendant contends that in imposing sentence the trial court effectively reduced the robbery conviction to the second degree and struck the finding that defendant had used a firearm during the commission of the robbery. In support of his contentions defendant relies on the trial court's

[1]All statutory references are to sections of the Penal Code, unless otherwise specified.

[2]Section 12022.5 provides in relevant part: "Any. person who uses a firearm in the commission or attempted commission of a robbery . . . upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. . . . [¶] Upon a second conviction under like circumstances, the additional period of imprisonment shall be for a period of not less than 10 years, and upon a third conviction under like circumstances the additional period of imprisonment shall be for a period of not less than 15 years, . . . [¶] Upon a fourth or subsequent conviction under like circumstance, the defendant may be imprisoned for life or a period of not less than 25 years, in the discretion of the court."

Although the finding that the robbery was of the first degree was necessarily grounded, in the circumstances of this case, on a finding that defendant was armed with the very weapon (see § 211a) which is the basis for the finding that defendant used a firearm in the commission of the robbery, no unauthorized increased punishment issue within the meaning of *People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], is raised thereby. Legislative intent that punishment could be imposed pursuant to both the first degree and use findings is found in the further provision of section 12022.5, as follows: "This section shall apply even in those cases where the use of a weapon is an element of the offense." (See *People* v. *Henry* (1970) 14 Cal.App.3d 89, 92 [91 Cal.Rptr. 841].)

As the robbery and assault counts are based on unrelated transactions, punishment for both violations does not raise a double punishment issue pursuant to section 654. (See *In re Ward* (1966) 64 Cal.2d 672, 675-676 [51 Cal.Rptr. 272, 414 P.2d 400].)

failure at sentencing to specify the degree of the crime or to specify the imposition of the additional term of imprisonment pursuant to section 12022.5.[3] (See *In re Candelario* (1970) 3 Cal.3d 702 [91 Cal.Rptr. 497, 477 P.2d 729].) Defendant further contends that in-court identifications should have been suppressed as they were tainted by improper pretrial procedures. We reject defendant's contentions and affirm the judgment.

The Reverend Joseph Swanner, a former police officer, observed a 1969 Mustang automobile blocking a driveway leading to his church parking lot. The window on the driver's side of the car was down and the car keys were inserted in the ignition switch. The church was in an isolated area and Swanner did not recognize the automobile. He removed the keys from the ignition switch and, seeking to ascertain the owner of the vehicle, opened its trunk. He found the name "Johnnie Bolden" on a letter in the trunk compartment. Swanner made inquiries in the immediate area, including a neighborhood grocery store, but on learning nothing, reported the matter to the sheriff's office. While waiting for the sheriff's investigator to arrive Swanner saw a man running across church property and intercepted him in the parking lot. The man produced a gun, demanded and was given the keys to the Mustang automobile. However, when ordered by his assailant to get into the car, Swanner struck the gun away and ran off. Although it was just after sunset, Swanner had a clear view of the man as he stood under an overhead light. Swanner again called the sheriff's office and provided descriptions of the intruder and his clothing.

Parris Winkler, operator of the neighborhood grocery store at which Swanner had made inquiry, was robbed at gunpoint by a man who appeared in the store approximately 10 minutes after Swanner had made his inquiry. The lighting in the store was good and Winkler had a clear view of the robber.

Sheriff investigators, who responded to Swanner's telephone calls within a few minutes after the second call, established that the Mustang automobile belonged to Johnnie Bolden, and that he had loaned the vehicle to defendant for a one-and-one-half to two-hour period during which the assault on Swanner and robbery of Winkler had occurred. The victims independently viewed at a police station photographs of six persons, including a photograph of defendant. Swanner made a qualified

[3] The court stated in sentencing defendant after he had waived arraignment therefor: "As to each Count it is the judgment and sentence of the court that the defendant be imprisoned in the State Prison for the term prescribed by law. The sentences are ordered to be served concurrently."

identification of the photograph of defendant as depicting the perpetrator of the assault, but Winkler was unable to identify any of the photographs as that of the robber. While being escorted to an area in the police station where a voice identification was to be attempted, Swanner looked into a room, saw defendant who was alone and not manacled, and volunteered: "We don't have to talk to him. There is your guy there." Winkler, however, could not positively identify defendant at that time although he thought that defendant looked like the man who had committed the robbery.[4] Both Swanner and Winkler made in-court identifications of defendant as the assailant and robber, respectively.

## ADMISSIBILITY OF IN-COURT IDENTIFICATIONS

Defendant contends that he was subjected to a pretrial showup so impermissively suggestive as to taint the in-court identifications, rendering them inadmissible. (See *United States* v. *Wade* (1967) 388 U.S. 218, 224 [18 L.Ed.2d 1149, 1155-1156, 87 S.Ct. 1926].) But even if we assume that a chance confrontation in a police station is analogous to an in-field or other informal identification at which a single suspect is exhibited to an eyewitness, it does not necessarily follow that a resulting positive or tentatively positive identification is impermissibly suggestive. "[T]he 'single person showup' is not inherently unfair." (*People* v. *Floyd* (1970) 1 Cal.3d 694, 714 [83 Cal.Rptr. 608, 464 P.2d 64], quoting from *Stovall* v. *Denno* (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967].) In *Floyd* a lone suspect was identified at a police station by a witness to a crime occurring "several hours" earlier. We noted the desirability of absolving innocent suspects without formal lineup proceedings when the suspect's retention is dependent on an eyewitness' identification. The confrontation in the present case, whether planned or not, occurred within hours after commission of the crimes and afforded an immediate opportunity for defendant to gain his release should the victims be unable to identify defendant. The issue is not whether a confrontation occurred, but whether the circumstances of that confrontation were unduly suggestive. (See *People* v. *Feggans* (1967) 67 Cal.2d 444, 449 [62 Cal.Rptr. 419, 432 P.2d 21].)

When the fairness of a confrontation is challenged, the burden is on the defendant to establish that the confrontation resulted in such unfairness that it infringed his right to due process. (*People* v. *Caruso* (1967) 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v.

---

[4]There is nothing in the record supporting an inference the People deliberately exposed defendant to the victims of the crimes.

*Romero* (1968) 263 Cal.App.2d 590, 593 [69 Cal.Rptr. 748].) ■ Here the victim of the assault viewed defendant when he was alone in a room, was not visibly subjected to any restraints, and there was nothing else to indicate he was even suspected of a crime. There was thus even less suggestion defendant had perpetrated the crimes on the victim-witness than would have resulted had defendant been exhibited to the witnesses at a properly conducted lineup. ■ "A procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police." (*People* v. *Slutts* (1968) 259 Cal.App.2d 886, 891 [66 Cal.Rptr. 862].) ■ As there is no showing of a suggestion of the identity of defendant in the circumstances of the confrontation in this case, defendant has failed to establish the procedure was unfair (see, *People* v. *Burns* (1969) 270 Cal.App.2d 238, 246 [75 Cal.Rptr. 688]), and his claim that the confrontation infringed due process protections must be rejected.

Although photographic identification procedures had been utilized by the police prior to Swanner's confrontation of defendant, no impropriety appears. ■ A conviction based on eyewitness identification at trial after a pretrial display of photographs, including photographs of the defendant, "will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; see also *People* v. *Feggans, supra,* 67 Cal.2d 444, 449.) ■ Defendant does not claim, nor does it appear that the photographic display was unduly suggestive and, although neither witness was able to make a positive photographic identification, we are unable to discern that the procedures gave rise to any substantial likelihood of irreparable misidentification.

We conclude that no unfairness resulted in defendant's in-court identification by the witnesses, and that uncertainties, if any, in the witnesses' testimony raised only evidentiary issues which were properly resolved against defendant by the jury.

REDUCTION OF DEGREE OF ROBBERY

Defendant's reliance on *In re Candelario, supra,* 3 Cal.3d 702, for the proposition that the degree of the robbery must be reduced, is misplaced. In *Candelario* a defendant who admitted a prior felony conviction for possession of marijuana was convicted by a jury of selling heroin. Under

the then prevailing statutes the prior conviction substantially augmented the minimum term without possibility of parole for the substantive crime. However, there was no recitation of a finding of the prior conviction in either the court minutes or the original abstract of judgment. We held that an amended abstract of judgment, purporting to include a finding of the prior conviction, was ineffective for that purpose. In so holding we noted that judicial as distinguished from clerical errors cannot be corrected by court amendment. "The distinction between clerical and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered . . . .' [¶] An amendment . . . may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion. [Citations.]" (*Id.,* at p. 705.)

In addressing the question of the significance of the court's omission to make and recite a finding of the prior conviction in *Candelario,* we stated: "Reference to the prior conviction must be included in the pronouncement of judgment for if the record is silent in that regard, in the absence of evidence to the contrary, it may be inferred that the omission was an act of leniency by the trial court. In such circumstances the silence operates as a finding that the prior conviction was not true." (*In re Candelario, supra,* 3 Cal.3d 702, 706.) We further stated: "Similar benefits accrue to the defendant when the *trier of fact* fails to specify the degree of a crime. In such circumstances, even on a plea of guilty, the crime is deemed to be of the lesser degree. (Pen. Code, §§ 1157, 1192.)" (*Id.,* fn. 2; italics added.)

In *Candelario* the trier of the crucial fact was the trial judge, not the jury as in the instant case. Although the defendant in that case admitted the prior conviction, it was nevertheless incumbent upon the judge to make a finding on that fact (see *In re Candelario, supra,* 3 Cal.3d 702, 706), and to pronounce judgment accordingly. Having failed to make such a finding and pronouncement we deemed in the circumstances of that case that the error, if any, was not clerical and that the purported amendment of the abstract of judgment was ineffective.

■ In the instant case the jury found not only that defendant had committed the robbery but also that the robbery was of the first degree.

There was no act or omission on the part of the trier of fact which could be construed as an act of leniency, as there was in *Candelario*. Moreover, the abstract of judgment reflects the jury's verdicts including the jury's finding that the robbery was of the first degree.[5] The omission occurred *only* in the oral pronouncement of judgment.[6] We stated in *Candelario* that an inference that an "omission was an act of leniency" could be predicated, inter alia, on a record which was silent in regard to a finding of the critical fact. (*Id.,* at p. 706.) The record in the instant case is *not* silent in regard to the finding of the degree of the robbery and, absent other record evidence to the contrary, *Candelario* does not support defendant's claim that an inference of leniency is permissible in the circumstances of this case.[7]

## Striking of Finding of Use of Firearm

 Defendant's reliance on *Candelario* for the further proposition the court intended to strike the use finding (see § 12022.5) by omitting reference to it when pronouncing sentence is likewise misplaced.[8] The power of the court to strike the use finding, if in fact it intended to do so, is claimed to have been authorized by section 1385.[9] If the court was so

---

[5]We are thus not presented with the precise *Candelario* issue, that is, the propriety of correcting a claimed clerical error in the abstract of judgment.

[6]We can only speculate as to the reason for the omission. It is not unreasonable to presume, however, that had formal arraignment for sentencing not been waived, the trial court, immediately before imposing sentence, would have been reminded of all matters relevant to the imposition of sentence. Defendant might more persuasively argue in such a case that a trial court omission to recite or pronounce a particular adverse finding was an intended act of leniency, rather than clerical error. We accordingly urge that trial courts exercise restraint in accepting waivers of arraignment in cases involving multiple charges and findings.

[7]Our examination of the record herein discloses no other matter from which it may be inferred that the omission was other than clerical in nature. The only matter which may be relevant to the issue is found in proceedings on defendant's motion for a new trial. That motion was denied after hearing immediately before the imposition of sentence. Had the court been of the view that under the circumstances of the case the first degree finding was not warranted it could have modified the verdict and found the robbery to be of the second degree. (§ 1181, subd. 6; *People* v. *Serrato* (1973) 9 Cal.3d 753, 760-761 [109 Cal.Rptr. 65, 512 P.2d 289].) We are thus not prepared to conclude on this record that the trial court intended a sub silentio modification of the verdict at the time of sentencing immediately after it had elected not to expressly make such modification in ruling on the motion for a new trial.

[8]While the use finding was not mentioned during sentencing, the abstract of judgment recites defendant had used a firearm in committing the robbery.

[9]Section 1385 expressly authorizes only the dismissal of "an action" in furtherance of justice. Notwithstanding language in section 12022.5 which appears to mandate

authorized it cannot be deemed to have exercised that power, however, because it failed to comply with provisions in section 1385 requiring the reasons for a dismissal "be set forth in an order entered upon the minutes."

■ Requirement of a statement of reasons for dismissal pursuant to section 1385 is mandatory, not directory (*People* v. *Orin* (1975) 13 Cal.3d 937, 944 [120 Cal.Rptr. 65, 533 P.2d 193]), and in the absence of such statement "the order may not be considered a dismissal under section 1385." (*People* v. *Superior Court (Howard) supra,* 69 Cal.2d 491, 503, fn. 7.)[10]

■ It is manifest that because even an *express* order of dismissal pursuant to section 1385 is ineffective in the absence of a statement of reasons, a use finding cannot be dismissed or struck sub silentio, as defendant claims in this case. There was not, of course, a statement of reasons in support of defendant's claimed striking.

We conclude no permissible inference of leniency may be drawn from the trial court's failure to orally recite the degree of the robbery or the use of a firearm in its commission.

---

augmented punishment upon a use finding, it is suggested this court in *People* v. *Burke* (1956) 47 Cal.2d 45, 50-51 [301 P.2d 241] (see also *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 501-502, fn. 6 [72 Cal.Rptr. 330, 446 P.2d 138]) has enlarged section 1385 to authorize the striking of a use finding (see also *People* v. *Dorsey* (1972) 28 Cal.App.3d 15, 18-19 [104 Cal.Rptr. 326]). We do not deem it necessary to reach this issue.

We note that the Legislature, by amendment of sections 1170, 1170.1, 1170.1a and 12022.5 effective 1 July 1977 (Stats. 1977, ch. 165, §§ 15, 16, 17 and 92) expressly provides for striking additional punishment if there are mitigating circumstances. Such amendment, of course, is not here applicable.

[10] For statements of reasons for the mandatory rule, see *People* v. *Orin, supra,* 13 Cal.3d 937, 944; *People* v. *Borousk* (1972) 24 Cal.App.3d 147, 156, fn. 11 [100 Cal.Rptr. 867]; *People* v. *Beasley* (1970) 5 Cal.App.3d 617, 637 [85 Cal.Rptr. 501].

We are aware of a widespread practice of selective dismissals of allegations charging criminal misconduct in multiple counts or of allegations of other matters such as prior convictions or use of firearms which, if found to be true, would augment the punishment for the substantive crime. We recognize too that dismissals and strikings are often, if not generally, made "in furtherance of justice" without a formal statement of reasons therefor. (See *People* v. *Orin, supra,* 13 Cal.3d 937, 945, fn. 10.) We do not intend by our holding herein to condemn such practices in those cases wherein the People have waived their right to challenge the defective procedure by themselves moving for such dismissals or strikings, or by not having objected thereto when expressly done in open court. (*Id.*; see also *People* v. *Curtiss* (1970) 4 Cal.App.3d 123, 127 [84 Cal.Rptr. 106].) But the People cannot be held to have condoned a dismissal or to have waived the right to object on appeal when, as in the circumstances of this case, the claimed act of leniency is not expressed in such terms by the court and is dependent upon claimed inferences.

The judgment is affirmed.

Tobriner, Acting C. J., Mosk, J., Richardson, J., Wright, J.,* and Sullivan, J.,† concurred.

Appellant's petition for a rehearing was denied October 13, 1977.

---

*Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.