105 Cal.App.3d 401 (1980)
164 Cal. Rptr. 349
THE PEOPLE, Plaintiff and Respondent,
v.
HENRY KILPATRICK, Defendant and Appellant.
Docket No. 10322.
Court of Appeals of California, Third District.
May 1, 1980.
*405 COUNSEL
Richard B. Parnell, under appointment by the Court of Appeal, for Defendant and Appellant.
*406 George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just, Charles J. James and David DeAlba, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
GROSSFELD, J.[*]
Convicted by a jury of kidnaping (Pen. Code, § 207), rape (Pen. Code, § 261, subd. 3), and oral copulation (Pen. Code, § 288a) with a finding of a prior felony conviction subject to enhancement under Penal Code section 667.5, subdivision (b), defendant appeals. He asserts reversible error (1) in the failure to exclude evidence seized from his automobile without a warrant; (2) in the failure to exclude evidence seized in a motel room incident to his warrantless arrest; (3) in the admission of the victim's identification testimony based on her preaccusation visual confrontation with defendant at the scene without the presence of counsel; (4) in the admission of defendant's statements obtained subsequent to his ambiguous request for assistance of counsel, and (5) in the imposition of consecutive sentences on the counts of rape and oral copulation. Our analysis of the above contentions causes us to affirm the judgment.

FACTS
We adopt the version of the facts most favorable to the People as the prevailing party. (People v. Rios (1976) 16 Cal.3d 351, 357 [128 Cal. Rptr. 5].)
About 6 p.m. on October 13, 1978, the victim was on her way to work at a hospital when a black man, subsequently identified as the defendant, knocked her to the ground and forced her into his dirty, white or tan, station wagon. While driving defendant forced the victim to lie on the front seat of the vehicle with her head on defendant's leg. Defendant would not allow her to look up to see his face or determine where they were going; hence, the victim saw very little but recognized freeway signs and realized they were traveling in a southerly direction. Defendant asked the victim how much money she had and how much *407 money her husband would pay to get her back. Defendant forced her to take off her blouse and bra, then stopped on the shoulder of the road to drop his pants to his ankles, and resumed driving. Defendant compelled the victim to perform oral copulation and threatened to "cut" her if she did not cooperate.
Sometime later, defendant stopped the station wagon, instructed victim to totally disrobe; defendant then placed her hospital uniform pants over the victim's head, and achieved some penetration while attempting intercourse.
Again resuming driving, defendant continued his threats of "cutting" the victim. Defendant told the victim to put on her blouse and pants, pulled up his own pants, and drove to a motel. After obtaining a key and parking in the motel carport, defendant forced the victim to accompany him inside a motel room. Instructed to look down, the victim noted the room number 24 on the key.
Once inside the room, both undressed and got into bed. In a few minutes, defendant fell asleep and began snoring. As it was then daylight, the victim took a good look at defendant and left the motel, still unclothed. The victim sought assistance from an elderly woman at a house across the street from the motel and from there called the police.
After the police arrived, the victim advised the officers that she had been kidnaped and raped, that the assailant was a large black male, and that he was still in room 24 of the motel across the street. She also told the officers that her purse and some of her clothing were still in the station wagon parked outside room 24 and the rest of her clothing was in the room.
The police officers went across the street, looked through the closed front window of the station wagon and saw in plain sight a woman's purse and undergarments. They then knocked on the door of room 24 several times and announced who they were. Hearing no response, they obtained a key from the motel office, unlocked the door, and announced their entrance. Finding defendant asleep in bed and unclothed, they arrested him. The police also found the victim's outer garments as well as defendant's clothes in the room. They removed the victim's clothing from the vehicle.
*408 Defendant was given Miranda warnings at the scene. He was then taken across the street for the victim to view him. When told of the intended confrontation, defendant said, "Isn't my attorney supposed to be here?" The supervising officer told him the police were under no obligation to provide a lawyer for a visual confrontation directly after a crime. The officer also advised the victim that the police did not know whether or not a certain person was responsible for the crime and wanted her to view this person to see if she recognized him. She positively identified defendant, clad in blue jean pants with handcuffs removed, as her assailant.
At the police station approximately an hour later, the same supervising officer readvised defendant of his Miranda rights[1] and specifically mentioned defendant's previous request regarding an attorney in the context of the visual confrontation with the victim. Thereafter, defendant waived his Miranda rights and told the officer that he had imbibed two 6-packs of beer during the night and had picked up the victim in the downtown area. He claimed she went with him willingly and did not recall having her orally copulate him but that could have happened. He also did not recall being close to the hospital but he could have been there.
At trial, defendant denied, inter alia, ever making such statements or ever seeing the victim before the visual confrontation across the street from the motel. In contradiction, the victim stated in court she had no doubt about defendant's identification as her assailant. She also independently remembered that her assailant was a very large black man sporting a beard and was wearing blue jeans and scuffy work shoes at the time.

DISCUSSION

I
(1a) Defendant contends that the evidence found in his automobile without a warrant was obtained as a result of an unreasonable search and seizure.
(2a) There is no search in the constitutional sense where police officers observe things in plain sight from a place they have a right to be. *409 (Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 634 [108 Cal. Rptr. 585, 511 P.2d 33]; People v. Hill (1974) 12 Cal.3d 731, 748 [117 Cal. Rptr. 393, 528 P.2d 1]; (overruled on other grounds in People v. DeVaughn (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal. Rptr. 786, 558 P.2d 872]); People v. Ott (1978) 84 Cal. App.3d 118, 127 [148 Cal. Rptr. 479].) (1b) The open carport area was used commonly by all motel tenants and thus was not a private, constitutionally protected space. Defendant's car was parked in the carport, and the victim's apparel was in plain sight without opening any doors or entering the car. "Any expectation by defendant of privacy as to objects in plain sight in the car would have been unreasonable, and no constitutionally protected right of privacy was violated when the officers looked through the window of the car." (People v. Terry (1969) 70 Cal.2d 410, 428 [77 Cal. Rptr. 460, 454 P.2d 36]; People v. Hill, supra, 12 Cal.3d 73.)
(2b) Furthermore, there is no search in the constitutional sense where police seize evidence in plain sight reasonably believed to be evidence of a crime. (People v. Wheeler (1974) 43 Cal. App.3d 898, 903 [118 Cal. Rptr. 205]; People v. Hill, supra, 12 Cal.3d 73.) (1c) The police were justified in taking into custody the clothing which had been seen since the victim had told the police that she had just been sexually assaulted in the station wagon while nude and her purse and undergarments were still in the vehicle near room 24.
Contrary to defendant's assertion, the fact that the officers had foreknowledge of the presence of evidence in his automobile is of no constitutional significance. "[T]here is no `inadvertence' requirement in this state" for evidence seized in plain sight. (People v. Cooper (1978) 83 Cal. App.3d 121, 131 [147 Cal. Rptr. 705], citing North v. Superior Court (1972) 8 Cal.3d 301, 307-308 [104 Cal. Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155].)

II
(3a) Defendant also argues that his warrantless arrest inside the motel room was illegal under the principle set forth in People v. Ramey (1976) 16 Cal.3d 263 [127 Cal. Rptr. 629, 545 P.2d 1333], and consequently, that evidence seized in the room incident to such arrest must be suppressed.[2]
*410 The Ramey court held "... warrantless arrests within the home ... per se unreasonable in the absence of exigent circumstances." (Id., at p. 276.) Recently, the Supreme Court also has clarified that the Ramey doctrine is applicable in the context of a rented motel room. (People v. Escudero (1979) 23 Cal.3d 800, 807 [153 Cal. Rptr. 825, 592 P.2d 812]; People v. Frierson (1979) 25 Cal.3d 142, 167, 169 [158 Cal. Rptr. 281, 599 P.2d 587].) It applies both to a long-term lessee and a transient guest who takes a room, however briefly, in a motel. (Escudero, supra, 23 Cal.3d 800; see also People v. Lopez (1979) 99 Cal. App.3d 754, 765 [160 Cal. Rptr. 774]; James v. Superior Court (1978) 87 Cal. App.3d 985, 990 [151 Cal. Rptr. 270].)
We thus address the question of exigent circumstances. (4) In the Ramey context, ". . `exigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (People v. Ramey, supra, 16 Cal.3d at p. 276.)
(3b) We conclude that the facts known to the officers readily show the imminence of defendant's escape or his destruction or concealment of evidence. Unlike the Ramey case involving the receipt of stolen property, the police knew that violent crimes of kidnaping and rape had just occurred and that the victim had escaped the clutches of her assailant within the hour and had promptly notified the police. (See People v. Escudero, supra, 23 Cal.3d at p. 809.) The victim relayed the emergency of the situation by telling an officer: "If you would hurry, you can ... get him right now. He is still asleep. Room 24." The police could well have believed that the victim's absence upon defendant's arousal would sound an alarm for him to flee or to destroy or conceal the evidence known by the police to be in the room. The police also knew that the suspect was only a temporary motel occupant, having registered the same morning; they did not know his permanent address, usual whereabouts, name, or similar identifying information other than his general physical description as a large black man. The station wagon might not furnish an adequate lead since it easily could have been stolen. Indeed, the most crucial fact leading to identification of the suspect was his temporary presence in room 24. Since the defendant was a very short-term occupant of the motel room and in all probability would have been *411 alerted upon discovering the absence of his victim, fear by the police of his flight before a warrant could be secured would have been justified. (See People v. Superior Court (Godwin) (1977) 68 Cal. App.3d 780, 783-784 [137 Cal. Rptr. 586]; People v. Lopez, supra, 99 Cal. App.3d at p. 766.) "In Ramey, the suspect had been fully identified and the charge against him detailed. The officers had no reason to approach his home save to arrest him." (Godwin, supra, 68 Cal. App.3d at p. 784.) Thus, the defendant's contention must fail in view of the exigent circumstances exception.

III
(5) Defendant next contends that he requested and was denied assistance of counsel at a preaccusation "showup" in violation of his Sixth Amendment rights. The contention is without merit.
The Sixth Amendment right to counsel, and thus the Wade-Gilbert per se exclusionary rule, does not apply to events before the initiation of adversary criminal proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment. (People v. Chojnacky (1973) 8 Cal.3d 759, 763-765 [106 Cal. Rptr. 106, 505 P.2d 530]; People v. Strawder (1973) 34 Cal. App.3d 370, 378 [108 Cal. Rptr. 901]; People v. Williams (1977) 68 Cal. App.3d 36, 47 [137 Cal. Rptr. 70]; People v. Johnson (1978) 85 Cal. App.3d 684, 690 [149 Cal. Rptr. 661]; see also Manson v. Brathwaite (1977) 432 U.S. 98, 109-113 [53 L.Ed.2d 140, 150-153, 97 S.Ct. 2243].) In the instant case, the police conducted the showup confrontation across the street from the motel after defendant's arrest but before any formal charge.
(6a) Defendant does not claim on appeal that the confrontation was unnecessarily suggestive and conducive to irreparable misidentification in violation of the Fifth Amendment due process clause.[3] Nonetheless, we address this issue in light of the Supreme Court's recent pronouncement that failure of counsel to make such an argument may constitute the denial of effective assistance of counsel. (People v. Nation (1980) 26 Cal.3d 169, 181-182 [161 Cal. Rptr. 299, 604 P.2d 1051].)
(7) A single person showup is not inherently unfair. (People v. Floyd (1970) 1 Cal.3d 694, 714 [83 Cal. Rptr. 608, 464 P.2d 64]; citing *412 Stovall v. Denno (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; People v. Hunt (1977) 19 Cal.3d 888, 893 [140 Cal. Rptr. 651, 568 P.2d 376].) Obviously, the single person showup is a suggestive procedure. (See Manson v. Brathwaite, supra, 432 U.S. at p. 110 [53 L.Ed.2d at p. 151]; In re Cindy E. (1978) 83 Cal. App.3d 393, 402 [147 Cal. Rptr. 812].) However, the central question of admissibility is whether under the totality of circumstances the identification was reliable even though the confrontation procedure was suggestive. (Manson v. Brathwaite, supra, 432 U.S. at pp. 113-114 [53 L.Ed.2d at pp. 153-154]; Neil v. Biggers (1972) 409 U.S. 188, 199 [34 L.Ed.2d 401, 411, 93 S.Ct. 375].) The factors to be considered in evaluating the likelihood of irreparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. (Manson v. Brathwaite, supra, 432 U.S. at p. 114 [53 L.Ed.2d at p. 154]; Neil v. Biggers, supra, 409 U.S. 188.) The burden is on the defendant to establish the confrontation resulted in such unfairness that it infringed his right to due process. (People v. Hunt, supra, 19 Cal.3d at pp. 893-894.)
(6b) Here, the victim took time while in the motel room to get a clear view, under daylight, of her assailant. Her descriptions of defendant's vehicle and personal appearance as well as her clothing found in the vehicle and in his motel room were all accurate. She was positive of his identification both at the field confrontation and at trial. Moreover, the length of time between the crime and the initial confrontation was less than an hour. On-the-scene showups for identification purposes aid in quickly exonerating the innocent and reliably discovering the guilty. (People v. Gomez (1976) 63 Cal. App.3d 328, 337 [133 Cal. Rptr. 731].) Thus, we conclude the identification at the scene was reliable under the circumstances and did not violate defendant's due process rights.

IV
(8a) Defendant contends that incriminating statements made by him at the police station were inadmissible as the product of a custodial interrogation conducted after he had inquired about counsel at the field confrontation.
*413 We need not address the difficult question of whether defendant's ineffectual request for counsel in a Sixth Amendment context coincidentally invoked his Fifth Amendment right to have counsel present at any interrogation. Unlike Sixth Amendment rights, Fifth Amendment rights apply at the time a criminal investigation focuses on a defendant (People v. Honeycutt (1977) 20 Cal.3d 150, 159 [141 Cal. Rptr. 698, 570 P.2d 1050]); once invoked, they may not be abridged unless the defendant later indicates on his own initiative a willingness to talk to police (People v. Pettingill (1978) 21 Cal.3d 231, 241 [145 Cal. Rptr. 861, 578 P.2d 108]).
Assuming arguendo that defendant's inquiry concerning the presence of counsel at a field confrontation bars a subsequent police initiated interrogation, we nevertheless conclude that any error in admitting defendant's incriminating statements were nonprejudicial since the statements constituted an admission rather than a confession. (9) The introduction into evidence of an admission is not prejudicial per se and is deemed harmless if the People demonstrate beyond a reasonable doubt that the error did not contribute to the conviction. (People v. McClary (1977) 20 Cal.3d 218, 230 [142 Cal. Rptr. 163, 571 P.2d 620]; Chapman v. California (1967) 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)
(10) "A confession is defined as `a complete and express acknowledgement of the crime charged' (People v. Morse (1969) 70 Cal.2d 711, 721 ...), a statement in which the defendant `disclos[es] his guilt of the charged offense and which exclud[es] the possibility of a reasonable inference to the contrary.' (People v. Jones (1965) 237 Cal. App.2d 499, 502 ...; People v. Beverly (1965) 233 Cal. App.2d 702, 712-713....) However, when the statement contains facts which amount to a claim of mitigation, justification or excuse, it is an admission rather than a confession. (People v. Fowler (1918) 178 Cal. 657, 664-665 ...; People v. Luzovich (1932) 127 Cal. App. 465, 469....) In both Fowler and Luzovich, the defendants admitted having committed a homicide, but each claimed that their actions were done in self-defense. The statements were held to be admissions." (People v. Maynarich (1978) 83 Cal. App.3d 476, 481 [147 Cal. Rptr. 823].)
(8b) The present record discloses that defendant never expressly acknowledged the crime as charged and admitted only to picking up the *414 victim with her consent. He did not confess to being near the hospital that night or forcibly orally copulating the victim, although he did admit the possibility of being near the hospital and the possibility of voluntary oral copulation. If believed, defendant's claim that the victim was a willing participant would absolve him of any guilt of the crimes of kidnaping, rape, and oral copulation. Thus, defendant's statements contain a claim of denial, mitigation and excuse and constitute merely an admission.
In applying the harmless error test, we note that the evidence against the defendant was overwhelming. The victim's testimony regarding the entire episode was both detailed and corroborated by other evidence. Her clothing was found as described in defendant's car and in the motel room. Visible wounds corroborated the victim's testimony that defendant knocked her to the ground with a blow to the head; she also had a bloody nose, a scraped knee, and a scraped elbow. Although her description to the police of her assailant was general in terms of a large black man, she was positive in identifying defendant as her assailant, both within the hour after her escape and at trial. Beyond a reasonable doubt, defendant's statements did not contribute to the conviction.

V
(11) Unmeritoriously, defendant finally contends that the trial court abused its discretion by imposing consecutive sentences for the counts of oral copulation and rape.
After the jury convictions of kidnaping, rape, and oral copulation, the court sentenced plaintiff to the upper term of five years for the rape conviction and to an additional term of one-third of the middle term of three years, or one year, for the oral copulation conviction. In addition to these consecutive sentences, the court imposed a one-year enhancement for a prior felony conviction but stayed execution of a sentence for the kidnaping count pending completion of the total seven-year unstayed prison term.
Under rule 425 of the California Rules of Court, criteria affecting a court's discretionary decision to impose consecutive rather than concurrent sentences include:
*415 "(a) Facts relating to the crimes, including whether or not:
"(1) The crimes and the objectives were predominantly independent of each other.
"(2) The crimes involved separate acts of violence or threats of violence.
"(3) The crimes were committed at different times or separate places, rather than being committed solely in time and place as to indicate a single period of aberrant behavior.
"(4) Any of the crimes involved multiple victims.
"(5) The convictions for which sentences are to be imposed are numerous.
"(6) Any circumstances in aggravation or mitigation."
In imposing the consecutive sentences, the trial court exhibited an awareness of these criteria as follows: "[I]t is the finding of the Court that oral copulation was a completely separate demand and insult placed upon the victim, and it was separate in time, and that the  it amounts to a separate intrusion upon the victim's right, and clearly is a separate crime here, and not one for which a Court should be required to pronounce a concurrent sentence. So... Mr. Kilpatrick will be punished for a violation of Section 288a of the Penal Code, forcible oral copulation, a felony, occurring October 13th, 1978, involving the same victim, by being sentenced to state prison for a term to run consecutively to the term just pronounced."
In exercising its discretion, the court clearly was guided by the criteria outlined in subdivisions (a)(2) and (a)(3) of rule 425 and the facts and circumstances of the case. (See Cal. Rules of Court, rule 410; People v. Betterton (1979) 93 Cal. App.3d 406, 416 [155 Cal. Rptr. 537].) Furthermore, the court was within the bounds of discretion in imposing consecutive sentences based on conduct divisible in time although arguably directed to one objective; it did not violate the proscription against multiple punishments for a single criminal transaction. (Pen. Code, 654; People v. Beamon (1973) 8 Cal.3d 625, 639, fn. 11 [105 Cal. Rptr. 681, *416 504 P.2d 905]; People v. Guevara (1979) 88 Cal. App.3d 86, 90 [151 Cal. Rptr. 511]; People v. Perez (1979) 23 Cal.3d 545, 553-554 [153 Cal. Rptr. 40, 591 P.2d 63].)
The judgment is affirmed.
Puglia, P.J., and Evans, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied July 9, 1980.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] Evidently, Supervising Officer Jackson was unaware of the previous Miranda warnings.
[2] Defendant otherwise concedes that a warrantless arrest is legal by police officers having reasonable cause to believe the arrestee has committed a felony. (Pen. Code, § 836, subd. (3).) He does not contend the arresting officers lacked reasonable or probable cause.
[3] The due process argument, however, was made in the trial court.